**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 1346 |
| | ) | |
| MODESTO OZUNA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Modesto Ozuna was convicted of possession with intent to distribute more than five kilograms of cocaine and was sentenced to a term of 25 years.  His conviction and sentence were affirmed on appeal in United States v. Ozuna, 561 F.3d 728 (7th Cir. 2009).

Mr. Ozuna has filed a petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, alleging eight separate violations of his constitutional rights.  We will discuss each of his allegations in turn, but first a brief statement of the facts.

**FACTUAL BACKGROUND**

Agents of the federal Drug Enforcement Administration received word in July 2003 that two drug dealers in the Chicago area were about to receive a drug shipment from Texas carried in a tractor-trailer registered to "Ozuna's Express."  On July 28, agents pulled over a tractor-trailer bearing the name "Ozuna's Express" driven by Modesto Ozuna.  According to the agents, Ozuna consented to a

search of the trailer, which revealed 200 kilograms of cocaine concealed in a load of limes.

Ozuna was arrested and, according to the agents, signed a written confession admitting that he knowingly transported the cocaine for delivery in Illinois.  He also expressed a desire to cooperate, and, because of that, he was released to return to Texas on the understanding that he would stay in touch with the agents. However, shortly after his return to Texas, he fell out of touch with the agents and was not seen or heard from until August 2004 when he was arrested.

During pretrial proceedings, at trial and in his present petition, Ozuna denies almost everything.  He denies that he knew that the cocaine was in his trailer, denies that he admitted knowing it was there, denies that he consented to a search of the trailer and denies that he signed a confession.

## THE SECTION 2255 CLAIMS

Ozuna's first six claims assert Sixth Amendment ineffectiveness on the part of Ozuna's trial and appellate counsel.

### 1.  Failure to Move To Dismiss the Indictment for Violation of the Speedy Trial Act

A large percentage of the extensive briefing on this petition is argument as to whether the Speedy Trial Act was violated, whether counsel was ineffective in failing to file a motion to dismiss the allegations and whether Ozuna was prejudiced by the

omission to make the motion. Ozuna argues that this court erroneously excluded time for plea negotiations without making necessary findings as to why the interests of the public were better served by efforts to avoid a trial than by proceeding to trial. The government counters that case law at the time did not require such findings and that the exclusions were proper. It seems to us that the government has the better of the argument, but, whether there were violations or not, the basic issue here is whether defense counsel was <u>constitutionally ineffective</u> in failing to file a motion to dismiss. As the Supreme Court stated in <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984)(citations omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Furthermore, in order to obtain relief for a Sixth Amendment violation, a convicted defendant must prove not only that counsel's performance fell below an objective standard of reasonableness, but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In this case, the exclusions of time were all by agreement, and a number of lengthy exclusions were at the specific request of defense counsel for time to prepare and brief motions or to prepare for hearings on motions. Ozuna changed counsel three times. The court appointed his initial counsel and then, at his request, a substitute appointed counsel, and finally, Ozuna retained private counsel. Each of these substitutions involved time for new counsel to become familiar with what had gone before. The government spells this out in detail. (Gov't's Resp. at 12-26.) Given that so much of the time before trial was devoted to efforts by defense counsel to work out an acceptable plea bargain with the government, it would have made no sense for counsel to derail those efforts by filing a motion to dismiss based on the fact that time had been excluded for that purpose. What effective assistance required was whatever continuances were necessary to negotiate a beneficial plea for the defendant.

Aside from the obvious fact that the omission to file a motion to dismiss was not ineffective assistance, it is equally obvious

that there was no prejudice from the failure to file, since the motion would certainly have been denied on the basis that so much of the excluded time was at the defendant's requests.  Moreover, even assuming the court had granted the motion, the dismissal would have been <u>without</u> <u>prejudice</u>, allowing the government to obtain an immediate reindictment.  It is unthinkable that this court would have dismissed the indictment <u>with</u> prejudice, given that the case involved the knowing transportation of 200 kilograms of cocaine and the defendant's lengthy fugitive status prior to his second arrest. (Considering the amount of the cocaine involved, it is unlikely that a dismissal with prejudice would have been sustained on an appeal by the government.)

We conclude that the petitioner's claim of ineffectiveness for failure to file a motion to dismiss for violation of the Speedy Trial Act is without merit.

### 2.  Failure to Investigate the Existence of a Bill of Lading for the Limes

As everyone knew from the outset of this case, a strong indication of the defendant's guilt was the fact that he had no bill of lading for the limes that were concealing the cocaine in his trailer.  As the Court of Appeals remarked:

> Ozuna had no paperwork for the limes, so they had no legitimate destination; their only purpose was to conceal the cocaine.

561 F.3d at 739.

The paperwork that was found by the agents in the cab of the tractor-trailer adds to the evidence of guilt. (Copies of these documents are attached as Exhibit B to the government's Response.) There are four bills of lading for mangoes showing that the mangoes had been picked up by Ozuna in Texas and delivered by him in the Chicago area. There was also a handwritten listing of the mango shipments shown on these four bills of lading, with no reference to any limes. All of these documents were introduced at trial. The handwriting on the list was not identified. Instead of going on to deliver the limes after making the mango deliveries, Ozuna checked into a hotel, where he spent the night. He was arrested the following morning as he drove the tractor-trailer toward an industrial area where no apparent destination for the limes was located.

Ozuna's second ineffectiveness claim is as follows:

> During my trial, when the issue of a lack of bill of lading for the load of limes came up, I told my attorney, Mr. James Shapiro that I did, at one time, have a bill of lading for the limes, which were found to contain the cocaine in this case. I told Mr. Shapiro that the bill of lading had been in my cab when I was arrested by authorities, and that he should call the London Fruit Company in Southern Texas for confirmation of that, and to get a copy of the bill of lading. Mr. Shapiro never followed up on this important fact.

(Sworn Decl. of Modesto Ozuna.)

The petitioner's principal trial counsel was Beau B. Brindley, who handled all of the examination of witnesses and the statements and arguments to the court and jury. His co-counsel was James A.

Shapiro.  The government has attached as Exhibit A to its Response

an affidavit of Mr. Brindley concerning the various allegations of

ineffectiveness made by the petitioner.  Mr. Brindley's affidavit

does not deny that Ozuna told counsel that there had been a bill of

lading for the limes and that an inquiry of the London Fruit

Company might turn up a copy of it.  Mr. Brindley's affidavit

states:

> Co-counsel and I conducted an inquiry regarding London
> Fruit and the load of limes.  Based on our review of all
> materials provided in discovery, I determined that no
> bill of lading for the limes was included in the
> discovery materials.  Despite my best efforts, I was
> unable to find any proof that a bill of lading for limes
> was recovered from the truck at the time of the arrest.
> I could not rule out the possibility that the bill of
> lading had been destroyed or lost by law enforcement.
> All I can say for sure is that I was unable to find any
> proof that the bill of lading was in the truck at the
> time of the arrest.  Likewise, I was unable to find any
> evidence affirmatively disproving Mr. Ozuna's claim that
> he received a bill of lading for the limes at London
> Fruit.
>
> *    *    *    *
>
> The assistant United States attorneys who prosecuted Mr.
> Ozuna provided defense counsel with extensive discovery
> in this case, including reports prepared by DEA agents
> who investigated Mr. Ozuna.  I never received any DEA
> report showing that government officials learned that the
> load of limes found in Mr. Ozuna's trailer were shipped
> by London Fruit, were accompanied by a bill of lading,
> and were legitimate.  The limes may have been obtained
> from London Fruit as Mr. Ozuna contends they were.
> However, no DEA report that was provided to me documented
> any proof of that contention.

(Brindley Aff. ¶¶ 6-7.)  Mr. Brindley's affidavit does not say that

he or Mr. Shapiro contacted London Fruit to see whether it had

shipped a load of limes on Ozuna's truck or whether it had issued

a bill of lading for any such shipment. What they did was to comb through the discovery provided by the government and determine that it included no evidence of a lime shipment by London Fruit.

A simple telephone call might have been all that was required to obtain either an affirmation or denial by London Fruit that limes were shipped or that a copy of a bill of lading for the limes existed. It might have required more than that, but, whatever the effort, it should have been made if Ozuna actually made the statement to Shapiro that he claims he made. In the absence of a denial by Shapiro or Brindley that the statement was made, we will assume it was made. Likewise, since Mr. Brindley's affidavit does not state that any direct contact was made with London Fruit, we will assume that none was made.

We have considerable doubt that London Fruit would have confirmed that it had shipped any limes or had issued any bill of lading for limes. This raises the question of whether the failure of Brindley and Shapiro to make inquiry of London Fruit was constitutionally ineffective assistance. A number of aspects of Ozuna's own conduct causes us to doubt that the inquiry would have been beneficial to him. There was his unexplained failure to deliver the limes on the same date he delivered the mangoes; his spending the night at a hotel with the limes still on the truck; his heading out the next morning toward an industrial park rather than any apparent destination of a consignee for the limes; the

trial testimony by the DEA that Ozuna admitted at the scene of the arrest that he had no paperwork for the limes; our finding after three suppression hearings that Ozuna had voluntarily made a signed confession admitting that he knowingly transported and intended to deliver the cocaine concealed in the limes; and the fact that the DEA agents released Ozuna after his arrest, indicating that he did indeed agree to cooperate with them.

Despite these reservations, we will assume _arguendo_ that the failure to contact London Fruit was ineffective representation. This brings us to the second prong of the _Strickland_ analysis, namely, was Ozuna prejudiced by the ineffectiveness?  The government argues that he wasn't, because even if the limes had been shipped by London Fruit, with a bill of lading, the evidence against Ozuna would still have been overwhelming and he would have been convicted.  It is true that, regardless of who shipped the limes, they were used to conceal the cocaine.  Whoever put the cocaine into the lime crates could have done so after the shipment left London Fruit and unbeknownst to London Fruit.  The lime crates loaded with the cocaine were placed at the front of the trailer, unseen behind crates of mangoes.  Thus, a bill of lading from London Fruit would not have disproved the proposition that Ozuna knew the cocaine was on his truck.  Considering all of the circumstances enumerated in the preceding paragraph of this opinion, we agree with the government that Ozuna has failed to show

that he was prejudiced by the omission of defense counsel to inquire of the London Fruit Company whether it had issued a bill of lading for the shipment of limes.[1]

### 3. __Ineffectiveness at Sentencing__

The petitioner alleges that trial counsel was ineffective at sentencing for failing to object to the enhancement of his sentence that relied on information he provided pursuant to a cooperation agreement. The information concerned previous drug deliveries Ozuna had made to the Chicago area. Ozuna contends that the use of this information violated United States Sentencing Guideline § 1B1.8(a) (2006), which provides that where a defendant, pursuant to a cooperation agreement, provides the government with "information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the __applicable guideline range__, except to the extent provided in the agreement" (emphasis added). However, if the

---

[1] The petitioner has made a separate motion for discovery of all DEA and police reports generated during the investigation of his case. The reason for the request is that the petitioner intended to show that government agents had contacted the London Fruit Company and learned that it had shipped limes via Ozuna's Express pursuant to a bill of lading, yet concealed this information during discovery. The petitioner argued that his __Brady__, __Giglio__ and Jencks Act rights had been violated in this way.

We reserved ruling on the petitioner's discovery motion until we could consider it in the light of the briefing on the § 2255 motion. In view of our ruling that even if there had been a lime shipment with a bill of lading, petitioner has failed to carry his burden to show that he would not still have been convicted, we are entering a separate order today denying his motion for discovery.

defendant violates the cooperation agreement, the government may use the information learned to pursue an enhanced sentence against the defendant.  U.S.S.G. § 1B1.8(b)(4).

The government argues that, first of all, there was never a "cooperation agreement" with the petitioner.  Secondly, the petitioner's guideline range recommended by the government and the probation officer and adopted by the court included no enhancement for additional quantities of drugs.  His guideline range was calculated only on the basis of the amount of cocaine found among the limes on his trailer, his use of his commercial driver's license, and obstruction of justice based on the perjury he committed at one of the suppression hearings.  Furthermore, even if there had been a cooperation agreement and his guideline range had been increased on the basis of the previous drug deliveries, Ozuna's breach of the agreement by his year-long fugitive status following his initial release from custody would have entitled the government to seek an enhancement of the guideline range.

As the government points out, the petitioner received a sentence below the low end of the guideline range.  He had a total offense level of 42 and a criminal history of II, which yielded a guideline range of 360 months to life in prison.  His 300-month sentence is five years below the low end of the range.

Trial counsel was not ineffective in failing to object to an improper enhancement of petitioner's guideline range because there was no improper enhancement.

### 4. Ineffectiveness on Direct Appeal

The petitioner's guideline range included a two-level enhancement for his use of a commercial driver's license to facilitate his offense. His appeal was handled by Mr. Brindley, and petitioner complains of his failure to cite authority which, in petitioner's view, would have resulted in a remand for a reduction of the sentence. The appeal was argued on December 10, 2008. On January 11, 2008, the Seventh Circuit had ruled in United States v. Gallardo, 266 F. App'x, 468, that the defendant Gallardo's concealment of 50 kilograms of cocaine under the sleeper bunk in his tractor-trailer did not justify an enhancement for use of his commercial driver's license. The license did not "lend significantly to the concealment of his offense" because the cocaine could have been carried in the trunk of "an ordinary sedan." Id. at 469. The petitioner argues that appellate counsel was ineffective in failing to cite Gallardo in his argument on appeal. The government makes a persuasive counterargument. Ozuna's commercial driver's license enabled him to drive a refrigerator truck that contained the limes and mangoes and appropriate bills of lading for the mangoes. As the government points out:

By contrast, the defendant in <u>Gallardo</u> did not use a cover load at all.  Using a cover load protected the cocaine from observation by law enforcement, and the mango bills of lading, refrigerated trailer, and petitioner's multiple stops to deliver the mangos would have led law enforcement conducting surveillance to believe that the trailer's contents were all legal.  In these ways, petitioner purposefully used the tractor-trailer and his commercial driver's license in significant ways to conceal his offense.  Because of the differences between petitioner's case and <u>Gallardo</u>, the Seventh Circuit would not have remanded the sentence even if appellate counsel had cited <u>Gallardo</u>.

(Gov't's Resp. at 39.)

Had <u>Gallardo</u> been cited, it is unlikely that there would have been a remand for resentencing.  The petitioner has shown neither ineffectiveness nor prejudice in regard to counsel's omission to cite the case.

### 5.  <u>Discrimination in Jury Selection</u>

The petitioner argues that the court erred in overruling counsel's <u>Batson</u> challenge to the government's peremptory strike of one of the two Hispanic jurors on the panel.  The petitioner is Hispanic.  (Pet'r's Mem. at 8.)  He also argues that appellate counsel was ineffective in failing to raise the <u>Batson</u> issue on appeal.

In regard to the petitioner's argument that he was denied a jury of his peers because of the government's challenge to this Hispanic juror, the government responds that the issue is procedurally barred because of the failure to raise it on appeal.  The government cites <u>United States v. Roberson</u>, 684 F. Supp. 2d

179, 189 (D. Mass. 2010), where the court held that a <u>Batson</u> claim was procedurally defaulted for failure to raise it on direct appeal.

The government goes on to argue that the <u>Batson</u> claim lacks merit in any event. We accepted the government's explanation that it had challenged the juror because he had dropped out of high school and had less education than the jurors it did not excuse. Every other member of the jury had at least a high school diploma. We found that "the government's chances of conviction increase with the intelligence and education of the persons who serve on the jury," and therefore we did "not regard ... education as a pretextual qualification." We stated that "it's a very real qualification, especially under the facts of this particular case." (Gov't's Resp. at 45-46 (quoting Trial Tr. 83).)

We still consider the government's challenge to have been legitimate and not race-based, and we find that the petitioner has not supported his claim that he was denied a jury of his peers.

Counsel did not appeal our <u>Batson</u> ruling. The affidavit of Mr. Brindley states:

> Regarding Mr. Ozuna's claim that counsel should have raised a Batson claim on appeal, co-counsel and I researched the issue and determined that the existing case law would not have let Mr. Ozuna prevail on appeal of the Batson issue.

(Brindley Aff. ¶ 10.) The question here is whether this determination amounted to constitutionally ineffective

representation. To establish this, there must be "an 'egregious' error – an omission of something obviously better (in light of what was known at the time) than the line of defense that counsel pursued." <u>Williams v. Lemmon</u>, 557 F.3d 534, 538 (7th Cir. 2009). Mr. Brindley argued three issues in the Seventh Circuit, one of which — our alleged improper handling of handwriting evidence at the motion to suppress — engaged the serious consideration of the Court and prompted an extensive discussion. <u>Ozuna</u>, 561 F.3d at 734-37.

Our conclusion is that appellate counsel was not ineffective in omitting a <u>Batson</u> argument on appeal and, further, that the likelihood of a new trial being granted on the basis of a <u>Batson</u> argument was insufficient to indicate that the petitioner was prejudiced by the failure to include it in the appeal. <u>See</u> <u>United States v. Hendrix</u>, 509 F.3d 362, 370 (7th Cir. 2007) (there is "no basis for reversal on appeal unless the reason given [by the government] is completely outlandish or there is other evidence which demonstrated its falsity").

## 6. <u>Denial of a Fair Trial</u>

The eighth claim listed in the petition, but not discussed in the supporting memorandum, is that Ozuna "was denied a fair trial by the court's refusal to permit him to put on the defense he was entitled to." (Pet. at 5.) Because there is no development of this claim in his memorandum, we are not sure what Ozuna means by

"the defense he was entitled to." A reasonable assumption is that he is referring to the evidence appellate counsel argued should have been admitted but was excluded in the second trial. The Court of Appeals evaluated this evidence after first noting that "a district court may exclude collateral or irrelevant evidence where its tendency to mislead and confuse the jury substantially outweighs its probative value." 561 F.3d at 738. The Court then found that each item of the proffered evidence had been properly excluded. Id. at 738-40.

There is no merit to the petitioner's claim that the exclusion of evidence denied him a fair trial.

## CONCLUSION

The petitioner has failed to show that his attorneys were constitutionally ineffective in their representation of him. Accordingly, the petition to vacate the conviction and sentence pursuant to 28 U.S.C. § 2255 is denied.

There are no genuine factual issues that require resolution, and therefore the petitioner's alternative motion for an evidentiary hearing is denied.

Because the petitioner has not made a substantial showing of the denial of a constitutional right, we deny a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

DATE:           March 19, 2014


ENTER:          John F. Grady, United States District Judge